UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HELLA CORPORATE CENTER
USA, INC., and HELLA
AUTOMOTIVE MEXICO S.A. de
C.V.,

       Plaintiffs,

v.

BOGE ELASTMETALL GMBH,
BOGE RUBBER & PLASTICS
MEXICO, S.A. DE C.V., and
BOGE RUBBER & PLASTICS
USA LLC,

       Defendants.

_____ /

Case No. 23-13252

Hon. F. Kay Behm
United States District Judge

Hon. Curtis J. Ivy
U.S. Magistrate Judge

## OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (ECF No. 34)

## I.   PROCEDURAL HISTORY

This matter is before the Court on Defendant BOGE GmbH's

Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 34) under

Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Plaintiffs HELLA

Corporate Center USA, Inc. ("HELLA USA") and HELLA Automotive

Mexico S.A. de C.V. ("HELLA Mexico") (collectively "HELLA") filed this

civil action in the Eastern District of Michigan on December 21, 2023

against Defendants BOGE Elastmetall GmbH ("BOGE GmbH"), BOGE

Rubber & Plastics Mexico, S.A. de C.V. ("BOGE Mexico"), and BOGE

Rubber & Plastics USA, LLC ("BOGE USA") (collectively "BOGE").

ECF No. 1.  BOGE USA previously brought a Motion to Dismiss for

failure to state a claim under Rule 12(b)(6) (ECF No. 7), which this

court denied (ECF No. 26).  As BOGE Mexico has not waived service,

nearly a year later Plaintiffs continue to make efforts to effect service in

accordance with the rules of service of process on foreign corporations.

*See* ECF No. 23, 31, 36, 40.  In the meantime, BOGE GmbH was served

in August 2024 (ECF No. 35) and brings the instant motion to contest

this court's exercise of personal jurisdiction over it.  In response,

HELLA disputes BOGE GmbH's motion and seeks sanctions by alleging

that this motion is merely an attempt to delay discovery and to waste

this court's time.  *See* ECF No. 37, PageID.393.

For the reasons discussed below, the court **DENIES** Defendant's

motion to dismiss and **DENIES** Plaintiff's request for sanctions.

## II.    FACTUAL BACKGROUND

The court restates the facts of this case as previously summarized

in its ruling on June 4, 2024 (ECF No. 26):

HELLA is a "global automotive supplier of, among other things, automotive driveline actuation control technology and high-performance electronics" and regularly enters into contracts with automotive original equipment manufacturers ("OEMs") and Tier 1 automotive suppliers. (ECF No. 1, PageID.8, ¶¶ 37-38). The BOGE Defendants supply several products in the automotive industry, including pedal box assemblies. *Id.*, ¶ 39. HELLA's complaint is based on allegations that they entered into a "release-by-release" contract with the BOGE Defendants: BOGE Mexico, BOGE USA, and BOGE GmbH. *Id.*, PageID.1, ¶ 1. This contract allegedly involved an agreement wherein HELLA would supply an actuator pedal system known as the "APS CIPOS Gen. 5" (the "Goods") to BOGE, who would then use the Goods as part of a pedal box assembly for the Tesla Model Y project. *Id.*, PageID.8, ¶¶ 39-40. HELLA argues the contract at issue obligated BOGE to: (1) "purchase firm quantities of Goods from HELLA;" (2) "amortize HELLA's tooling costs across a minimum quantity of Goods;" (3) "cover design, development, manufacturing, and operations costs;" and (4) "cover obsolescence and raw material costs paid by HELLA in the event of termination of the Contract by BOGE." *Id.*, PageID.14, ¶¶ 86-87.

. . . HELLA alleges that BOGE first submitted a request for the Goods on November 24, 2020. *Id.*, PageID.8, ¶ 40. On January 29, 2021, HELLA submitted a final quote to BOGE to bid on the supply of the Goods for the Tesla Model Y project. *Id.*, ¶ 41. BOGE subsequently accepted HELLA's bid and issued a "Letter of Notification" that "expressly incorporated and adopted many of the required terms" from HELLA's bid, including

"BOGE's agreement to pay for tooling in the amount of approximately $415,000 with 8% interest," a requirement that "900,000 Goods [were] to be purchased by BOGE before the amortization amount was paid off," and an identification of "design and development costs built into HELLA's quoted pricing." *Id.*, PageID.8-9, ¶¶ 43-45.  HELLA alleges this Letter of Notification was signed by Linda Steinhauer from BOGE USA's purchasing department, "on behalf of BOGE Mexico." *Id.*, ¶ 46; see also ECF No. 16-1.  HELLA further alleges that, between January 2021 and May 2021, "HELLA, BOGE USA, BOGE GmbH, and BOGE Mexico worked together to progress the Tesla program for the Goods." *Id.*, ¶ 47.  BOGE Mexico then issued a Scheduling Agreement to HELLA Mexico for the purchase of the Goods and "EDI releases to identify the firm quantities of Goods to be purchased under the Contract." *Id.*, ¶¶ 48-49.  HELLA alleges "Ms. Steinhauer, of BOGE USA, negotiated with HELLA USA on the Contract terms and conditions of purchase for the Goods [] on behalf of BOGE Mexico." *Id.*, ¶ 50.  HELLA's bid offer, the Letter of Notification, the Scheduling Agreement, the EDI Releases, and the Terms and Conditions together comprise the Parties' contract for the Goods.  *Id.*, PageID.10, ¶ 52.

HELLA then alleges BOGE cancelled the firm orders for 191,484 Goods on July 20, 2023, informing them that "production was being delayed for 16 months for Tesla" and the "forecast[] for future firm orders was reduced by nearly 100,000 parts per year for the remaining of the 5.25 years." *Id.*, PageID.11-12; ¶¶ 60, 68.  Prior to this cancellation, HELLA claims BOGE had only purchased 25,948 Goods, "reducing the

> final tooling cost of $459,927.74 by $12,890.97, for
> an outstanding tooling amortization cost of
> $447,036.77." *Id.*, PageID.11, ¶ 61.  At this point,
> HELLA claims they had "purchased sub-
> components required to manufacture the firm
> order of 191,484 Goods in the amount of
> $471,126.68," and had "invested $302,957.00 in
> design, development, fixture, and jig costs." *Id.*,
> ¶¶ 62-63.  HELLA also claims they "accumulated
> an additional $4,323.07 in storage fees and costs
> for completed Goods and raw materials resulting
> from BOGE's cancellation of the firm order." *Id.*,
> ¶ 65.  HELLA alleges BOGE, through BOGE
> GmbH, finally informed them on August 11,
> 2023, that the "Model Y program was effectively
> cancelled." *Id.*, PageID.12, ¶ 71.

ECF No. 26, PageID.241-44.

HELLA then sued the BOGE Defendants for damages from breach
of contract for "failing, collectively and individually, to abide by the
terms of the Parties' agreement related to HELLA's supply of certain
accelerator pedal components to BOGE."  ECF No. 1, PageID.1.

## III.  STANDARD OF REVIEW AND APPLICABLE LAW

### A.  *Applicable Law of Personal Jurisdiction*

Personal jurisdiction can be either general or specific.  General
jurisdiction exists when the defendant's affiliations with the forum state
are "so continuous and systematic as to render" the defendant
"essentially at home" there.  *Goodyear Dunlop Tires Operations, S.A. v.*

*Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (cleaned up).  "Specific jurisdiction, on the other hand, depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting citation omitted).  Because HELLA only ever argues that BOGE "purposefully availed" itself of Michigan's jurisdiction, the court understands HELLA to allege that this court has specific, not general, jurisdiction over the BOGE Defendants, including BOGE GmbH.  *See, e.g.*, ECF No. 37, PageID.377.

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997).  In a diversity action such as this one, there is a two-part test for determining whether the court may exercise specific personal jurisdiction over a non-resident defendant.  First, the court must determine whether jurisdiction is authorized under the forum state's long-arm statute.  *See Air Products & Controls, Inc. v. Safetech*

6

*Int'l Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Under Michigan's long-arm statute, specific jurisdiction may be exercised over a corporation if, for example, it (1) transacts any business within the state; (2) does or causes an act to be done, or consequences to occur, in the state resulting in an action for tort; or . . . (5) enters into a contract for services to be rendered or for materials to be furnished in the state by the defendant. Mich. Comp. Laws § 600.715. If jurisdiction is authorized under the state's long-arm statute, then the court must also determine whether the exercise of jurisdiction comports with constitutional due process. *Air Products*, 503 F.3d at 550. Because Michigan's long-arm statute extends to the limits of due process, these two inquiries merge into one and the Court "need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process." *Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1998) (internal quotation marks and citation omitted); *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).

The Sixth Circuit has established a three-part test for specific jurisdiction to determine if application of a state's long-arm statute meets due process:

7

> First, the defendant must purposefully avail
> himself of the privilege of acting in the forum
> state or causing a consequence in the forum state.
>
> Second, the cause of action must arise from the
> defendant's activities there.
>
> Finally, the acts of the defendant or consequences
> caused by the defendant must have a substantial
> enough connection with the forum state to make
> the exercise of jurisdiction over the defendant
> reasonable.

*Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968); *see also Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (applying the *Southern Machine* test).

"Purposeful availment" is the "constitutional touchstone" of specific personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted); *see also Sullivan v. LG Chem., Ltd.*, 79 F.4th 651, 671 (6th Cir. 2023). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that

create a 'substantial connection' with the forum State." *Id.* (citation

omitted and emphasis in original).  In particular, where a defendant

"has created 'continuing obligations' between himself and the residents

of the forum, he manifestly has availed himself of the privilege of

conducting business there." *Id.* at 476 (internal citation omitted).  In

addition, physical presence in a forum state is not required, and the

Supreme Court has "consistently rejected the notion that an absence of

physical contacts can defeat personal jurisdiction there." *Id.* (citations

omitted).

### B.     Standard of Review on Rule 12(b)(2) Motions

Motions to dismiss under Rule 12(b)(2) involve burden shifting.

The plaintiff must first make a prima facie case, which can be done

merely through the complaint.  *Malone v. Stanley Black & Decker, Inc.*,

965 F.3d 499, 504 (6th Cir. 2020) (citing *Am. Greetings Corp. v. Cohn*,

839 F.2d 1164, 1169 (6th Cir. 1988)).  The burden then shifts to the

defendant, whose motion to dismiss must be properly supported with

evidence.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Once the defendant has met the burden, it returns to the plaintiff, who

may no longer "stand on his pleadings but must, by affidavit or

otherwise, set forth specific facts showing that the court has jurisdiction." *Id.*

Within that burden-shifting framework, however, a district court has discretion in how it resolves a 12(b)(2) motion. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020); *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). "If it decides that the motion can be ruled on before trial, the court 'may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d at 1214 (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981)). The court's choice affects the plaintiff's burden. *Id.* If the court holds an evidentiary hearing and the defendant's motion is properly supported with evidence, the plaintiff must overcome it by a preponderance of the evidence. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). But "[w]hen the district court 'rules on written submissions alone' the burden consists of 'a prima facie showing that personal jurisdiction exists.'" *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Serras*, 875 F.2d at 1214). "Dismissal in this procedural posture is proper only if all the

10

specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *Theunissen*, 935 F.2d at 1458. This rule prevents a defendant from defeating personal jurisdiction by simply filing an affidavit contradicting the jurisdictional allegations of the complaint. A defendant may, however, invoke the court's discretion to order a pretrial evidentiary hearing, just as a plaintiff may move for jurisdictional discovery. *Malone*, 965 F.3d at 505-6 (district court erred by crediting defendant's controverting affidavit without first allowing any form of discovery); *see also Taco Mamacita, LLC v. Wilco Holdings, LLC*, No. 1:21-cv-62, 2022 U.S. Dist. LEXIS 197078, at *8 (E.D. Tenn. Oct. 29, 2022).

## IV. ANALYSIS

### A. *Personal Jurisdiction*

The first question is whether the complaint makes out a prima facie showing of jurisdiction. *Schneider*, 669 F.3d at 697. This "requires a plaintiff to establish, with reasonable particularity, sufficient contacts between the defendant and the forum state to satisfy the relevant long-arm statute and the Due Process Clause." *Malone*, 965 F.3d at 504; *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d

883, 887 (6th Cir. 2002); *see also Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980) ("[The plaintiff] need only 'demonstrate facts which support a finding of jurisdiction[.]'") (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). Here, that means showing that BOGE GmbH purposefully availed itself of the privilege of conducting activities in the state of Michigan. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (plurality op.); *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012).

The Sixth Circuit has adopted an alter-ego theory of personal jurisdiction as to related corporations. This theory is often applied in the parent-subsidiary context, and in that context "provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). In deciding whether two entities are alter egos, "courts are to look for two entities acting as one." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848 (6th Cir. 2017). Additionally, under Michigan law, agency theory provides a hook for personal jurisdiction; when determining whether one corporation's contacts are sufficient to

12

exercise personal jurisdiction over another corporation, the court must look to whether "there were activities carried on in the corporation's behalf by those who are authorized to act for it." *Kircos v. Lola Cars Ltd.*, 97 Mich. App. 379, 387 (1980). Notwithstanding the ordinary application of this theory to a parent-subsidiary relationship, "numerous courts, including courts applying Michigan law, have considered the alter ego theory beyond the parent-subsidiary relationship, albeit at times under a different name." *Wang v. GM, LLC*, No. 18-10347, 2021 U.S. Dist. LEXIS 99166, at *6 (E.D. Mich. May 26, 2021) (collecting cases); *see, e.g.*, *Anwar*, 876 F.3d at 849-50; *Scarff Bros., Inc. v. Bischer Farms, Inc.*, 386 F. App'x 518, 524-25 (6th Cir. 2010) (reviewing district court decision holding related entities, not in a parent-subsidiary relationship, liable under alter-ego theory as set forth under Michigan law).[1] The premise of alter ego jurisdiction rests on the

---

[1] *See also Nichols v. Pabtex, Inc.*, 151 F. Supp. 2d 772, 780 (E.D. Tex. 2001) ("What makes this case somewhat unique is that [the plaintiff] seeks to hold a company liable for the acts of a sister company, not a parent for the acts of its subsidiary. Few cases address this situation, but those that have indicate that the distinction between parent-subsidiary and sister-sister is not relevant."); *Powers v. Emcon Assocs.*, No. 14-cv-03006, 2017 U.S. Dist. LEXIS 148751, 2017 WL 4075766, at *3 (D. Colo. Sept. 14, 2017) (explaining that the determination of "whether a corporation is an alter ego is not limited to the status of parent-subsidiary or sister corporations" but is, instead, dependent on a variety of factors); *Ziegler v. Dale*, 2018 U.S. Dist. LEXIS 225556, No. 2018 WL 8131670, at *5 (D. Wy. Dec. 7, 2018)

"substance, not form, of the inter-corporate nexus." *Superior Coal Co. v. Ruhrkohle, A.G.*, 83 F.R.D. 414, 421 (E.D. Pa. 1979) (citing *K. J. Schwartzbaum v. Evans, Inc.*, 44 F.R.D. 589, 591 (S.D.N.Y. 1968).

HELLA originally alleged that BOGE GmbH was BOGE USA's parent company, but since then, submissions of corporate affiliation at ECF No. 30 (statement of corporate affiliation) and by Plaintiffs at ECF No. 41 (response to this court's order to show cause on subject matter jurisdiction) have clarified that BOGE GmbH is not actually BOGE USA's parent company, but instead an affiliated "sister" corporation which is 100% owned by a non-party corporation, CRRC New Material Technologies GmbH ("CRRC"). This analysis proceeds by treating all three BOGE Defendants as both BOGE and HELLA have now represented: affiliated companies which are all 100% owned subsidiaries of CRRC. The analysis, however, largely does not change from the parent-subsidiary context when the ultimate issue concerns

---

(citing *PanAm. Mineral Servs., Inc. v. KLS Enviro Res., Inc.*, 916 P.2d 986, 990-91 (Wyo. 1996) (holding that where a court had personal jurisdiction over an alleged alter ego, the court also had personal jurisdiction over the alter ego's parent and sister companies); *Heraeus Electro-Nite Co. v. Midwest Instrument Co., Inc.*, No. 06-355, 2006 U.S. Dist. LEXIS 76452, at *9 (E.D. Pa. Oct. 18, 2006) ("Where sister corporations are under common control, the same rules as with the cases involving a [] subsidiary apply.").

the substance of the relationship over the specific form.  *See Superior Coal Co. v. Ruhrkohle, A.G.*, 83 F.R.D. at 421.

To summarize: HELLA has alleged that "BOGE" collectively negotiated with its offices in Michigan to form a contract on behalf of BOGE Mexico.  ECF No. 1, ¶ 46.  In an earlier decision, this court found that HELLA has sufficiently alleged that BOGE USA controls BOGE Mexico, and therefore may be liable on HELLA's alleged contract, to survive a 12(b)(6) motion to dismiss.  *See* ECF No. 26.  On this 12(b)(2) motion, and determinative to whether HELLA has made out a prima facie case for personal jurisdiction over BOGE GmbH, the relevant question is whether HELLA has sufficiently alleged that BOGE GmbH in turn controls or is an alter ego of BOGE USA, or whether BOGE GmbH's specific participation in this contracting process is sufficient to directly avail itself of Michigan's jurisdiction.  Under either theory, HELLA has done so.

> 1.    *HELLA's written submissions and relevant findings regarding the Defendants' relationships*

This court has already made findings relevant to this determination.  In its order on BOGE USA's 12(b)(6) Motion to Dismiss, this court found that:

> HELLA's complaint alleges that all three BOGE
> Defendants are parties to the contract, referring
> to BOGE USA, BOGE Mexico, and BOGE GmbH
> collectively as "BOGE". (ECF No. 1, PageID.1
> ("together, "BOGE"); PageID.14 ("Hella entered
> into the Contract with BOGE…") (emphasis
> added)). . . . However, the only documents that
> have been provided to the court are the Letter of
> Notification (ECF No. 16-1) and the "BOGE
> Rubber & Plastics (BRP) General Terms and
> Conditions" (ECF No. 16-2). While these
> documents regularly refer to BOGE Mexico, they
> also refer to "BOGE Rubber & Plastics" more
> broadly and are printed on similar "BOGE
> Rubber & Plastics" letterhead. (See ECF Nos.
> 16-1, 16-2). Without the other documents to
> prove otherwise, the court must rely on the
> allegations included in HELLA's complaint,
> which claim all three BOGE Defendants are
> parties to the contract.

ECF No. 26, PageID.248.

This court then went on to explain why HELLA had sufficiently

alleged that BOGE USA was a party to the alleged contract at issue in

this case:

> HELLA's complaint alleges that "BOGE USA
> controls BOGE Mexico" and has unique control
> over their operations, "particularly through
> BOGE USA's sales office, to arrange for
> contracts with HELLA like the present contract;
> and soliciting quotes for development work."
> (ECF No. 1, PageID.4-6, ¶¶ 19, 26). They further
> allege that BOGE USA "negotiates contracts like
> the present contract with HELLA…overseeing,
> coordinating, and communicating on behalf of

16

BOGE Mexico in Michigan." *Id.*, ¶ 27.  In addition to their control over the negotiation and formation of BOGE Mexico's contracts, HELLA further alleges that BOGE USA and BOGE GmbH "organized a meeting with HELLA [to] further inform[] HELLA that production was being delayed for 16 months for Tesla, and that forecasts for future firm orders was reduced by nearly 100,000 parts per year for the remaining 5.25 years," in violation of the contract.  *Id.*, PageID.12, ¶ 68.  This, along with the "cancellation of the firm order of 191,484 Goods" form the basis of HELLA's claims against each of the BOGE Defendants.  *Id.*, PageID.11, ¶ 61. Considering these allegations in the light most favorable to HELLA, they are sufficient at this stage to allow the court to draw the reasonable inference that BOGE USA exercised control over BOGE Mexico in a way that caused them to "breach their contractual allegations and harm [HELLA]."  *See EPLET*, 984 F.3d at 502 ("RACER has sufficiently alleged that DTE Energy exercised its control over DTEPN in a way that caused DTEPN to breach its contractual obligations and harm RACER."); *Ypsilanti Cmty Utilities Auth.*, 678 F. Supp. 2d at 572 (citing *Ypsilanti Cmty. Utilities Auth. v. MeadWestvaco Air Sys., LLC*, No. 07-CV-15280, 2008 WL 2610273, at *3 (E.D. Mich. June 30, 2008) ("YUCA had set forth sufficient facts to support its claim of piercing the corporate veil with the allegations that: '[i]n negotiating the contract for MeadWestvaco Air Systems, MeadWestvaco Corporation exercised control of the contractual transaction in a manner that defrauded and wronged Christman and YUCA. As a result, Christman and YUCA suffered an unjust lost and injury due to MeadWestvaco Corporation's affirmative representations and

> conduct.'")).  Any further argument about the
> individual elements of piercing the corporate veil
> under Michigan law is better suited for
> determination at the summary judgment stage,
> where the court and the parties will have the
> benefit of materials uncovered during discovery.
> *Id.* ("Defendants' argument is better-suited for
> the summary judgment context, where they may
> revisit the veil-piercing argument and try to
> refute RACER's allegations.").

ECF No. 26, PageID.253-54.

Thus this court has already found that HELLA sufficiently alleged

BOGE USA's "mere instrumentality" control over BOGE Mexico to

survive a motion to dismiss.  *See* ECF No. 26, PageID.251.  As to BOGE

GmbH's relationship to those two entities, as well as BOGE GmbH's

own participation in this contracting process, the complaint makes

additional relevant allegations:

> 24. Upon information and belief BOGE USA's
> head of sales is located in the State of Michigan.
>
> 25. BOGE GmbH regularly conducts business in
> Michigan, including doing business for many
> years with HELLA within the State of Michigan;
> negotiating contracts like that of the present
> contract dispute with HELLA within the State of
> Michigan; overseeing, coordinating, and
> communicating on behalf of BOGE USA in
> Michigan regarding sales of products and
> contract negotiations like those for the Goods;
> and on information and belief, conducting regular

> business with other automotive suppliers located in Michigan.
>
> …
>
> 47. Between the months of January 2021 and May 2021, HELLA, BOGE USA, BOGE GmbH, and BOGE Mexico worked together to progress the Tesla program for the Goods, including discussing and revising commercial topics like price and technical topics regarding the design and development of the Goods.
>
> …
>
> 68. In July 2023, BOGE, led by BOGE GmbH and BOGE USA, organized a meeting with HELLA and further informed HELLA that production was being delayed for 16 months for Tesla, and that forecasts for future firm orders was reduced by nearly 100,000 parts per year for the remaining of the 5.25 years of the Contract.
>
> …
>
> 71. On August 11, 2023, BOGE, through BOGE GmbH, informed HELLA that the Model Y program was effectively cancelled.

ECF No. 1.

The court is left with some gaps; for example, which individuals participated in the contracting process is not totally clear from what has been provided thus far. Still, HELLA alleges sufficient facts for this court to resolve the instant motion, and further, HELLA has since

supplemented the allegations in the complaint with a declaration and other written submissions attached to their response. *See* ECF Nos. 37-2 ("Exhibit 1"), 37-3 ("Exhibit 2"), 37-4 ("Exhibit 3"), 37-5 ("Exhibit 4"), 37-6 ("Exhibit 5"). 37-7 ("Exhibit 6"), 37-8 ("Exhibit 7"), 37-9 ("Exhibit 8"), 37-10 ("Exhibit 9").  The exhibits are listed as follows, with HELLA's written submissions alleging what these emails contain:

> **Exhibit 1:** August 2023 Email from Sebastian Kroll, Teamleader of Purchasing – Electronics at BOGE GMBH to HELLA regarding business, design, and production topics.

> **Exhibit 2:** November 2023 Email from Stephan Pruisken, Head of Purchasing for BOGE GMBH to HELLA USA and BOGE GMBH members regarding Tesla negotiations in response to HELLA's claim for unpaid development costs and other breach claims.

> **Exhibit 3:** November 2023 Letter from Philipp Frings, Spokesman of the Management Board, and Stephan Pruisken, Head of Purchasing, both for BOGE GMBH, detailing BOGE's denial of the HELLA contract claim raised following BOGE GMBH's announcement that the contract was terminated for thousands of sales.

> **Exhibit 4:** January 2024 Email from Stephan Pruisken, Head of Purchasing for BOGE GMBH to HELLA USA and BOGE GMBH members setting quantities for the Model

Y program, as well as design specifications.

**Exhibit 5:** May 2021 Email from Hendrick Langhorst, responsible for Project Purchasing Product Line Plastics at BOGE GMBH to HELLA USA and BOGE GMBH members regarding "more detailed discussion" about the Tesla Cybertruck project, including "all technical topics", a "clear technical specification", and requesting a meeting (set for "German time") to discuss the topics further.

**Exhibit 6:** April 2021 HELLA USA correspondence directly with BOGE GMBH, following a meeting with members from BOGE GMBH, regarding "the most up to date draft of the test specifications for the pedal module" product.

**Exhibit 7:** April 2021 HELLA USA correspondence with BOGE GMBH, following a meeting with members from BOGE GMBH, regarding the "Hella Tesla Cybertruck Technical Review".

**Exhibit 8:** January 2024 HELLA USA correspondence with BOGE GMBH members to inform those business contacts, including Stephan Pruisken (Head of Purchasing), Philipp Frings (Spokesman for the Management Board), and Sebastian Kroll (Teamleader Purchasing – Electronics), about the present lawsuit following the failure of business negotiations.

**Exhibit 9:** Declaration of Joshua Birk, Head of Legal and Compliance for North America at HELLA.

The court may consider these written submissions to determine whether Plaintiffs have alleged a prima facie showing of personal jurisdiction. *See Malone*, 965 F.3d at 505 (the court may consider all of a plaintiff's written submissions such as supporting affidavits, not merely the complaint, even at the first step of the analysis). Collectively, they allege that BOGE GmbH had meaningful contact and correspondence with HELLA throughout the period of the alleged contract at issue.

## 2. *Application of alter ego status to HELLA's submissions*

When evaluating whether corporations are alter egos for jurisdictional purposes, courts have identified several relevant indicia, though no single one is determinative. For example, in *Third Nat'l Bank v. Wedge Grp., Inc.*, 882 F.2d 1087, 1090 (6th Cir. 1989), the Sixth Circuit held that even though a parent corporation never directly conducted business in the forum state, the exercise of personal jurisdiction was proper. *Wedge*, 882 F.2d. at 1090. In that case, the court considered that the parent company was the sole owner of its subsidiary, its officers were directors of the subsidiary, the parent had a

tax-sharing agreement with the subsidiary, the parent participated in negotiations on behalf of the subsidiary, and it deposited funds in the subsidiary's account.  These factors in combination were sufficient to establish that the parent company had purposefully availed itself of the forum state and the court had specific jurisdiction over it.  *Id.* Similarly, in *Conley v. MLT, Inc.*, No. 11-11205, 2012 U.S. Dist. LEXIS 71821 (E.D. Mich. May 23, 2012), the court found the exercise of specific jurisdiction permissible when a subsidiary company's sole business was to market and sell the parent company's business in the United States. In that case, too, there were other indicia of control by the parent company; the subsidiary was 100% owned by the parent company, shared many of the same officers, and its operating budget was approved by the parent.  *See id.* at *11 ("the undisputed facts, however, reveal that Allegro essentially serves as the Occidental S.L. marketing department, regardless if the two corporations are distinct entities under the law. Based on the above facts, the Court concludes that Allegro's business activities are carried on in Occidental S.L.'s behalf, and that Occidental S.L. authorizes and directs the business activities of Allegro. Allegro and the Occidental Defendants therefore exist as the same entity for purposes of personal jurisdiction."); *but see Estate of*

*Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357 (6th Cir. 2008)
(Toyota Motor Sales, U.S.A, Inc. was not the alter ego of Toyota Motor
Corporation when they had separate books, financial records, bank
accounts, filed their own taxes, and had separate boards of directors
and workforces).

Here, HELLA has essentially alleged that BOGE GmbH, BOGE
USA, and BOGE Mexico are all alter egos of one another, versions of the
same company in different countries but in fact separated by only a
veneer of the corporate form. *See* ECF No. 1, ¶¶ 14, 25. They are
"affiliates" that concededly share common goals, ownership, control, and
interests – and even operate under the same name. This state of affairs
is properly alleged in this case where HELLA alleges that all three
BOGE Defendants engaged in contractual discussions with HELLA via
BOGE's officers (or offices) in Germany, the US, and Mexico. *See id.*
¶ 25-28, 47. While HELLA does not clearly plead that the BOGE
Defendants share officers, Defendants have represented that at least
some of BOGE's officers involved in this case work for more than one of
the BOGE Defendants, further supporting the allegations of common
officers and/or workforces that is one indication of alter-ego status.
Much as BOGE USA is alleged to have controlled BOGE Mexico during

the contract at issue, BOGE GmbH is alleged to have similar control over BOGE USA in turn; specifically, that it (a) oversaw, coordinated, and communicated "on behalf of BOGE USA in Michigan regarding sales of products and contract negotiations like those for the Goods" (ECF No. 1, ¶ 25), (b) worked with HELLA to progress the Tesla program for the contract, including discussing and revising price and technical topics regarding the design and development of the Goods (*id.* ¶ 47), and (c) caused BOGE to breach the alleged contract with HELLA (*id.* ¶ 68).  Like in *Conley*, the fair inference to be made is that BOGE USA's sole business is to market and sell BOGE's global business in the United States.  All three BOGE entities are sister corporations, and even if none owns the shares of the other, all are 100% owned by CRRC. Plaintiff has plausibly alleged that the three "are inextricably and indistinguishably linked," as demonstrated by their joint ownership, name, employees or officers, and communications, and when these entities are alleged to have communicated via their shared officers to negotiate and form a contract across national borders, "they held themselves out to the world as one entity."  *See Int'l Petro. Prods. & Additives Co. v. PXL Chems. BV*, No. 1:20-cv-00586, 2022 U.S. Dist. LEXIS 176951, at *26-27 (S.D. Ohio Sep. 28, 2022); *Anwar v. Dow*

*Chem. Co.*, 876 F.3d 841, 848 (6th Cir. 2017) (courts are to look for entities "acting as one.").  The court finds that HELLA has alleged that BOGE GmbH, BOGE USA, and BOGE Mexico exist as the same entity for purposes of personal jurisdiction.  *See Conley*, No. 11-11205, 2012 U.S. Dist. LEXIS 71821 at *11.

3.   *Application of the* Southern Machine *test*

With this shared entity status in mind, the court turns to the *Southern Machine* test for personal jurisdiction, with its three prongs: (1) whether BOGE GmbH purposefully availed itself of the privilege of doing business in Michigan, (2) whether BOGE GmbH's activities in Michigan proximately caused HELLA's injury, and (3) whether the consequences caused by BOGE GmbH's actions were sufficiently connected to Michigan to make its courts' jurisdiction reasonable.  *See Malone*, 965 F.3d at 503 (referencing the *Southern Machine* test, 401 F.2d 374, 381).

Because the court finds that BOGE GmbH is effectively the same entity as BOGE USA and BOGE Mexico for personal jurisdiction purposes, BOGE's acts of negotiating and contracting with HELLA show that BOGE GmbH has purposefully done business in Michigan, satisfying the first prong.  Even if this alter ego theory were not enough

26

on its own to show purposeful availment, however, HELLA has
additionally alleged that BOGE GmbH has itself purposefully done
business in Michigan.  This case shares some similarities with *Simsa v.
Gehring Ltd. P'ship*, No. 05-CV-72159-DT, 2006 U.S. Dist. LEXIS
16607, at *13 (E.D. Mich. Feb. 24, 2006), where a German corporation
acted through its related partnership in Michigan to form a contract (a
contract that, similarly to this case, the German corporation was not
listed as a party on).  Regardless of that fact, the district court noted
that during the plaintiffs' relationship with defendants, there was never
any distinction between the two corporations; they operated under the
umbrella of one company.  *Id.* at *4.  The district court found the
German corporation's contacts sufficient to establish personal
jurisdiction, even though it had found only conclusory (and legally
insufficient) allegations of an alter ego relationship.  *Id.* at *13 ("GmbH
is a related entity of the Partnership, GmbH conducts substantial,
continuous and systematic business directly or indirectly in Michigan
and/or Texas, at some point GmbH negotiated with Plaintiff in
Michigan and/or Texas and the end result of such negotiations was the
Agreement.").  Although BOGE GmbH has argued that its email
contacts with HELLA cannot show purposeful availment in Michigan,

27

HELLA has alleged that BOGE GmbH regularly conducts business in Michigan, including "doing business for many years with HELLA within the State of Michigan; negotiating contracts like that of the present contract dispute with HELLA within the State of Michigan; overseeing, coordinating, and communicating on behalf of BOGE USA in Michigan regarding sales of products and contract negotiations like [the instant contract]." ECF No. 1, PageID.5, ¶ 25. That is sufficient to show purposeful availment in this district. *See Southern Machine Co.*, 401 F.2d at 382 ("Physical presence of an agent is not necessary . . . for the transaction of business in a state."); *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 901 (6th Cir. 2017) ("[Defendant] cannot avoid jurisdiction by framing all of his activities as contacts with plaintiffs—who happen to be in Michigan—instead of contacts with Michigan itself."); *see also In re SFC Sols. Czestochowa SP Z.O.O.*, No. 23-0107, 2024 U.S. App. LEXIS 24278, at *6 (6th Cir. Sep. 24, 2024) ("[A]lthough the individual defendants never physically entered Michigan, there is record evidence that the individual defendants purposely availed themselves of Michigan when entering the licensing agreements.")

Second, BOGE GmbH's entity status alongside its sister corporations means that its activities, via alleged contract with HELLA, have a causal nexus to the alleged breach of contract in Michigan.  This analysis necessarily "involves some overlap with the analysis on the [first] prong."  *See Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 507 (6th Cir. 2014) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002) ("'[P]urposeful availment' is something akin to a deliberate undertaking to do *or cause an act or thing to be done* in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." (citation omitted)) (emphasis in original).  And again, BOGE GmbH's activities also directly satisfy the second *Southern Machine* prong because HELLA alleges that "BOGE GmbH[] informed HELLA that the Model Y program was effectively cancelled[,]" effectively causing and/or directing the alleged breach of contract.  ECF No. 1, ¶ 71.

Finally, HELLA is a Michigan corporation.  ECF No. 1, PageID.3. The BOGE Defendants are sophisticated parties who were aware who they were communicating with.  Their contacts with HELLA are

29

sufficiently connected to Michigan to make its courts' jurisdiction reasonable.  BOGE GmbH's alleged contacts in Michigan, both on its own behalf and those done by any BOGE agent for the benefit of the BOGE Defendants as a collective entity, are therefore sufficient to support a finding that the exercise of jurisdiction is reasonable and satisfies the demands of due process.

Under the burden shifting framework, the court stops there. When resolving a 12(b)(2) motion on written submissions alone, the burden on the plaintiff is only a prima facie showing, and the court does not consider controverting evidence.  *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Serras*, 875 F.2d at 1214).  Neither party has invoked this court's discretion to conduct discovery or conduct an evidentiary hearing beyond the oral argument the court ordered on this motion.  When asked at oral argument whether they would like discovery or an evidentiary hearing on this issue, both parties represented to the court that the motion could and should be resolved on the written pleadings alone.  The court thus stops at the first step and will not consider BOGE's supporting affidavit.  *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020) (noting that controverting affidavits contesting jurisdiction are irrelevant when

a court resolves a 12(b)(2) motion on the pleadings).  Because this court

concludes from Plaintiffs' allegations that they have made a prima facie

showing supporting the exercise of personal jurisdiction over BOGE

GmbH in this case, the Defendant's motion to dismiss for lack of

personal jurisdiction is **DENIED**.

  B. *Request for Sanctions*

  In addition to responding to BOGE GmbH's jurisdictional motion

to dismiss, HELLA further asks this court to award them fees and costs

for responding to that motion under 28 U.S.C. § 1927.  ECF No. 37,

PageID.380.  "Unlike Rule 11 sanctions, a motion for excess costs and

attorney fees under § 1927 is not predicated upon a 'safe harbor'

period[.]"  *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir.

1997).  Title 28 U.S.C. § 1927 provides that any attorney "who so

multiples the proceedings in any case unreasonably and vexatiously

may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such

conduct."  Sanctions are warranted under § 1927 "when an attorney

objectively 'falls short of the obligations owed by a member of the bar to

the court.'  While subjective bad faith is not required, the attorney in

question must at least knowingly disregard the risk of abusing the

judicial system, not be merely negligent." *Kidis v. Reid*, 976 F.3d 708, 723 (6th Cir. 2020) (quoting *Carter v. Hickory Healthcare Inc.*, 905 F.3d 963, 968 (6th Cir. 2018)).

Here, BOGE GmbH has brought this Motion under Rule 12(b)(2) within weeks of being served. ECF No. 35, 34. While the court notes that BOGE GmbH apparently did not waive formal service of process, formal service of process against co-Defendant BOGE Mexico is still ongoing, and thus discovery has not begun in this case, nor has it been delayed further than it otherwise would be because discovery cannot proceed until all the Defendants have been served. Additionally, the court notes that the question of personal jurisdiction raised by Defendant BOGE GmbH was sufficiently reasonable that the court held oral argument on the motion to resolve questions it had for the parties before issuing this opinion. Accordingly, the request for sanctions based only on unreasonable delay and vexatious motion practice under § 1927 is **DENIED** without prejudice.

## V.   CONCLUSION

Therefore, the court **DENIES** Defendant's motion to dismiss and **DENIES** Plaintiff's request for sanctions without prejudice.

**SO ORDERED**.

Date: December 4, 2024                    <u>s/F. Kay Behm</u>
                                          F. Kay Behm
                                          United States District Judge